No. 11,749.

ALLEN M. BRASHEAR VS. THE HOUSTON CENTRAL, ARKANSAS AND
NORTHERN RAILROAD COMPANY.

This case is distinguished from those in which it is held that the passenger on a
railroad, carried beyond his station, can not recover damages caused by jump-
ing from a moving train. 9 An. 441; 41 An. 796; 37 An. 708; 45 An. 1201.

The passenger on a railroad train, with a ticket for a station at which it is cus-
tomary for the train not to stop, but to slow its movement, so as to allow pas-
sengers to alight, will be entitled to damages if, called to the platform by the
announcement of the station, he is thrown from the steps of the car and in-
jured, his fall being caused by the sudden increase of the speed of the train,
when it should have been slowed or stopped. Wharton on Negligence, Secs.
371, 375, 377.

Nor will it make any difference in the liability of the railroad company, that the
passenger is thus thrown from the car on the side opposite to his station; the
train having passed the station without affording him an opportunity to
alight, and he having crossed to the other side, under the reasonable expec-
tation the train would be slowed at his destination a few feet beyond the
station.

APPEAL from the Fourth Judicial District Court, for the Parish
of Grant.   *Wear, J.*

*H. H. White* for Plaintiff, Appellee.

ON THE LIABILITY OF DEFENDANT.

C. C., Art. 2315 *et seq.;* 45 An. 1201; 41 An. 795; Abbott's Law of
Corporations, Vol. 2, p. 598; 37 An. 705; Sedgwick on Dam-
ages, Vol. 2, p. 359; Am. and Eng. Ency. of Law, Vol. 4, Tit.
Contributory Neg., p. 15 *et seq.;* 38 An. 111-185; 40 An. 661.

" If a passenger directs his course, whether entering or leaving a
train, by the direction, or express or implied invitation of the
corporation   *   *   *   he is injured, the corporation will be
responsible for such injury."   Buswell on Personal Injuries,
Secs. 124, 136, 137.

" It is apprehended that in the United States the stopping of a train
and the announcement of a trainman of the name of a station
will be taken to be an invitation to the passenger to alight."  31
Indiana, 408.

WEIGHT ATTACHED TO THE VERDICT OF A JURY.

20 An. 455, 458; 22 An. 31; 6 La. 31, 492; 31 An. 430; 45 An. 381.

CONTRIBUTORY NEGLIGENCE.

23 An. 462; 38 An. 116; 44 An. 806; 40 An. 420; 82 U. S. 401; 95 U. S. 161; 100 U. S. 213; 59 Penn. St. 374; 15 Atl. Rep. 624; 34 Cal. 153; 134 Ill. 57; 28 Mo. 657; 89 Mo. 650.

QUANTUM OF DAMAGES.

37 An. 705; 38 An. 111; 40 An. 661; C. C. 1928; 17 An. 19.

---

*Frederick G. Hudson* for Defendant, Appellant:

A railroad company is not liable to a passenger for an accident which he might have prevented by ordinary attention to his safety. Even though the agents in charge of the train are also remiss in their duty. 34 An. 1087, 1088.

Although the defendant's negligence may have been the primary cause of the injury, yet an action for such injury can not be maintained, if the proximate and immediate cause can be traced to the want of ordinary care and caution of the person injured. 144 U. S. 429; 139 U. S. 551, 558, and cases cited. Thompson on Negligence, 115, 117; Cooley on Torts (1st Ed.) 675; 4th Am. and Eng. Enc. of Law, Tit. "Contributory Negligence," 30, and authorities cited in Note 1; Patterson's Railway Accident Law, pp. 51, 55 and 61.

While it is the duty of a railroad company to stop its train at the station to which it has contracted to carry a passenger, and to land him safely and conveniently, yet the fact that the company neglects this duty, and the train passes the station without stopping, does not justify a passenger in jumping from the moving train, unless expressly or impliedly invited to do so by the employés of the company. Voluntarily jumping from a moving train, uninfluenced by any invitation expressed or intended by the employés of the company, was imprudent and dangerous.

In such a case no action for resultant injury can be sustained on account of the contributory negligence of the person injured. 41 An. 796, and authorities there cited.

Persons injured while attempting to board a moving train, if injured in so doing, can not recover damages from the railroad company therefor, on account of their own contributory negligence, even though it be shown that employés of the company were in fault. 9 An. 441; 26 An. 462.

In order to enable the plaintiff to recover, it must appear that there was no want of care, and no imprudence on the part of the plaintiff, by which the injury was in any manner directly brought about.   Hill vs. R. R. Co., 11 An. 292.

To recover, plaintiff must show affirmatively that he was guilty of no negligence which resulted in the injury complained of.   He alleges in his petition that he was in no manner guilty of negli-´ gence—the onus is upon him to establish such fact affirmatively. 11 An. 292; Cooley on Torts, 659, 661; Pierce on Railroads, 320; Whar. on Neg., Sec. 427; 4 Am. and Eng. Ency. Law, p. 92; 23 An. 264; 40 An. 787; 44 An. 692, 806; see also Woods' Railway Law, p. 1262.

Submitted on briefs March 28, 1895.
Decided April 8, 1895.

The opinion of the court was delivered by

MILLER, J.   The plaintiff, a passenger on defendants' train, alleges he was thrown with violence to the ground by the movement of the cars while he was endeavoring to alight at his place of destination. The defence is the general issue and contributory negligence.   The judgment of the lower court, based on the verdict of a jury, was against the defendant for three thousand dollars, and defendant appeals.

The plaintiff's ticket on the train was for a flag station, at which the trains made no stop unless flagged or to put out passengers, and the testimony is that, for the last purpose, it was customary to slow the train instead of coming to a full stop.   It is in proof that as the train approached the station was called by the train officials, and accordingly plaintiff went to the platform to find that the train had passed his station.   He supposed the purpose was to put him off at the mill where he was working, a short distance from the station, and with that idea he stood on the steps of the car, but instead of slowing, the train, as the petition alleges, " gave a sudden jerk," which threw him to the ground.   If not this jerk, it is in proof, the speed of the train was increased, so that there was no slowing either at the plaintiff's station or after it was passed to enable plaintiff to alight. The plaintiff's testimony is he was thrown from the train, nor is there any testimony that he made the attempt to alight from the

47

moving train.　We note the reference in the brief of the defendant to the petition, and the inference from the petition, it is claimed, is that plaintiff's fall was due to his stepping or jumping from the train. The allegations were: The custom of the trains to slow and not to stop at the station; that plaintiff was familiar with the cust m and had on several occasions got off while the train was in motion; that as the station was neared the usual stopping signals were given, that plaintiff went to the platform, and when about to step off there was the jerk and increased speed, throwing him to the ground.　We do not think there is any sensible variance between the petition and the plaintiff's testimony that he was thrown from the train, and, as stated, he is not contradicted on that point.

In our appreciation of the testimony, the defence that the passenger, carried beyond his station, can not recover for injuries ensuing from attempting to leave a train in motion, has no application. That defence is recognized in the text-books and adjudicated cases.　1 Thompson on Negligence, 115; Damont vs. Railroad Company, 9 An. 441, citing the leading Pennsylvania decision of Aspell vs. Railroad Company; Walker vs. Railroad Company, 41 An. 796. If, indeed, under the impulse of the moment due to the signal of the train official, and the custom not to come to a stop, the plaintiff had jumped, his imprudence might, perhaps, be deemed attributable to the implied direction of the company.　It has been held that where the imprudence of the passenger under such circumstances is due to the error or fault of the train official, he will not be disentitled to recover for injuries.　Wharton on Negligence, Secs. 375, 377; 2 Redfield on Railways, Sec. 194; 2 Thompson on Negligence, 1174; Lehman vs. Railroad Company, 37 An. 708; Odom vs. Railroad, 45 An. 1201.　The plaintiff was invited by the train signal to leave his seat and go to the platform.　Under the natural expectation the train would slow, if not stop, to enable him to alight, it can not be deemed negligence that he stood on the steps of the car. It is urged on us that his station was passed, and he went from one, i. e., the station side, to the other, and was standing on the steps on that side when the accident occurred.　This was because he supposed, as he states, not putting him out at the station, it was intended to slow up at the mill a few feet beyond.　We can not hold this change in his position, induced by the natural expectation of a chance to alight, the company owes to its passengers, charges the plaintiff with neg-

ligence. Called to the platform and to the steps of the car, for that is the significance of the whistle, and the announcement of the station by the train official, the train is neither slowed or stopped, passes the station and the mill with a speed accelerated, when it should have been diminished, and the result the plaintiff is thrown to the ground and injured. We think the record shows a case of responsibility of the defendant.

We have given very careful attention to the question of damages. The plaintiff describes himself as a handy laboring man, had followed blacksmithing, repairing machinery and had followed farming; when working he received two dollars and fifty cents per day, and when the accident occurred was engaged in making a "slab conveyer," for which he was to get fifty dollars. The fall bruised him in his back, ribs and shoulders. He testifies his arm was disabled, his leg shortened, and other resulting injuries are stated by him. There is in the record the testimony of a number of physicians. Two called by plaintiff testify to the injuries, but the statement from one as to the result of the injuries is that his sufferings may be serious, accompanied with the qualification he may recover. Another physician who called on the plaintiff with his family physician negatives any serious injuries to plaintiff. Two physicians, experts, appointed by the court to examine plaintiff, report no injuries to shoulders, hip, back or legs; no difference in the length of the legs, and ascribe plaintiff's pains to some nervous trouble. We can not find in the record any satisfactory basis for damages on the theory of permanent diminution of the plaintiff's working capacity.

It weighs with us, too, that the plaintiff, after the accident, worked at his job with no diminution of his physical ability apparent to his fellow workmen; but, of course, the effects of the fall might not then have been developed. Indeed, we think it proved the plaintiff was made sick later from the effects of the fall. The jury gave three thousand dollars. We can not perceive the basis for this verdict. We think the damages should cover the expenses of his sickness and loss of time, and some allowance should be made for his suffering. But from the examination of the record we are brought to the conclusion the judgment should be reduced.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be avoided and reversed, and it is now ordered,-

adjudged and decreed that the plaintiff recover from defendant five hundred dollars, with interest from date of judgment of the lower court, and the costs of the lower court; those of the appeal to be paid by him.